Argued March 2, reversed April 6, 1955

## GARDNER *v.* GARDNER

281 P. 2d 705

*Lawrence N. Brown,* Salem, argued the cause and filed a brief for appellant.

*Joseph P. Ruble,* Portland, argued the cause and filed a brief for respondent.

Before WARNER, Chief Justice, and ROSSMAN, LUSK, BRAND, LATOURETTE and TOOZE, Justices.

PER CURIAM.

This is an appeal by Sylvia Gardner from an order on petition of her former husband, Vaughn A. Gardner, divesting her of the care and custody of the three minor children awarded to her in the divorce decree.

Plaintiff was granted a decree of divorce from her husband in August, 1951, under the terms of which she was awarded custody of the three minor children: Alvin L., Anita V., and Susan, their respective ages at that time being nine, seven and two years. The decree further provided that the husband was to pay $40 per month for the support of each child and $50 per month toward the support of plaintiff. The husband failed to make his support payments, although he was employed under civil service as a construction superintendent by the Thirteenth Naval District, Seattle, Washington, at a salary of over $5,000 a year. During the summer of 1952 plaintiff had defendant arrested for nonsupport. At that time he was in arrears approximately $2,000, $900 of which he thereafter paid. Defendant, in the meantime, had married a young woman, the unsavory causa proxima of the divorce. Immediately after his arrest he filed a motion to obtain custody of the children and the elimination of support both for them and plaintiff. The court, after a hearing, entered an order awarding the custody of the two older children to the paternal grandparents, Mr. and Mrs. Alvin W. Gardner "and subject thereto the possession of said minor children to be given to the defendant, Vaughn A. Gardner" with the "right of reasonable visitation of said children and said children shall be made available for her visitations at the home of the paternal grandparents in Portland, Oregon, the first Sunday in November, 1953, and the first Sunday of every third month thereafter." The care and custody of Susan Gardner was continued in plaintiff "provided, however, that said Susan Gardner shall for a period of one year from and after the date of this Order remain in a foster home approved by the Marion County Juvenile Officer," and while Susan remained in a

foster home for one year defendant was directed to pay $15 a month and thereafter $35 a month for her support.

There is no suggestion in this case that the mother is immoral or of bad character. The claim is that she neglected the children. The record discloses that when the parties were divorced she was living in a trailer house in Salem. On account of the failure of the father to make his support payments the mother was compelled to and did obtain employment. Her first employment was with Marr Radio, with hours from 8 a. m. to 5 p. m. She was desirous of procuring a home so she took another position which required her absence from home from 7 in the evening until 3 in the morning at the Senator Hotel. The two older children were in school and she arranged with her ex-husband's aunt to look after Susan, the youngest child, while she was working. After she started her night work she employed baby sitters to stay with the children. Several times the baby sitter failed to arrive and it was on one or two of these occasions that a juvenile officer went out to the home and suggested to the plaintiff that she place the children with the aunt while she was working at night, which she did. She finally bought a house in Salem on contract and through the dual employment she was enabled to support the children and pay on her home. It was when she had her husband arrested for nonsupport that he started proceedings to modify the decree.

The evidence discloses that the children were, in a sense, neglected while plaintiff was working at night. However, she had made arrangements for their care which proved unsatisfactory. But it must be remembered that her motives were proper in trying to furnish her children with the support that her ex-husband

had been ordered to supply. The unfortunate situation that she found herself in was occasioned by the husband's failure to provide the support ordered by the court. It would be an anomaly indeed if children of such tender age were deprived of their mother's care, and the custody of the two older children given to the father, solely because the father failed to provide support which she was compelled to furnish because of his derelictions. If defendant will keep up his support payments, which the evidence indicates he has ability to do, she will have sufficient money to keep her family together in her own home.

Reversed.